■ JOSEPH TANZI, Respondent, v SALVATORE VERGOPIA et al., Appellants.—In an action, *inter alia,* for the dissolution of two joint ventures, and for accountings, the defendants appeal from so much of a judgment of the Supreme Court, Putnam County (Hawkins, J. H. O.), dated July 19, 1985, as determined that the plaintiff (1) is a joint venturer in Ver-Tan Imports and is entitled to a one-third interest therein; (2) is entitled to receive certain funds held in escrow pursuant to a prior order of the same court (Gurahian, J.), dated January 9, 1981; and (3) is entitled to an accounting demonstrating the interrelationship between the two joint ventures and the profits generated by horses owned by Ver-Tan Imports housed

on the premises owned by the joint venture known as Jan-Mar.

Ordered that the judgment is modified, on the law, by deleting the paragraphs numbered "17" and "18" thereof, and substituting therefor a provision that the plaintiff is a joint venturer in Ver-Tan Imports only to the extent of his contributions. As so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements.

The plaintiff, Joseph Tanzi, and the defendants, Salvatore Vergopia, the plaintiff's uncle, and Frank J. Tomasulo, were joint venturers in several joint ventures dating back to approximately 1975 and 1976, involving the purchase and subsequent breeding of domestic Arabian horses.

In 1977, Tanzi, Vergopia and Tomasulo orally agreed to form a joint venture for the purpose of purchasing Arabian horses in Europe and importing them to the United States, to be bred with the domestic Arabian horses that the trio already owned through their existing joint ventures. Each was to have a one-third interest in the new venture, which was to be called Ver-Tan Imports, and each one was to advance approximately $17,000 as his share of the capital needed to purchase three Arabian fillies from Poland. Tanzi, Vergopia and Tomasulo completed separate loan applications, seeking approximately $17,000 each with a Bergen County, New Jersey bank, and each put up separate collateral to secure his share of a $50,000 loan.

The bank rejected the plaintiff's (Joseph Tanzi's) loan application, apparently because the collateral he offered (his home) was encumbered. Thereafter, the defendants Tomasulo and Vergopia invited the defendant Salvatore Vargin to be the third investor in the venture. Vergopia, Tomasulo and Vargin jointly borrowed the sum of $50,000 on September 26, 1977, and subsequently used the money, doing business as Ver-Tan Imports, to purchase the three horses in Poland. The imported horses were initially housed on the farm where the plaintiff resided and were bred with the horses of the other joint ventures housed on the same farm.

During 1978 and 1979 the plaintiff contributed $14,727.61 and the defendants contributed a total of $35,855.23 to Ver-Tan Imports for the purchase of additional horses overseas.

In October 1979, Tomasulo, Vergopia and Vargin formed a joint venture named Jan-Mar for the purpose of buying a farm to house the growing number of horses owned by the various ventures. The farm was purchased and the various

horses were moved to the Jan-Mar Farm in Goshen, New York. The relationship between the plaintiff and Vergopia became strained, and the plaintiff subsequently commenced the instant action in 1980.

At the trial, the plaintiff maintained, *inter alia,* that he was a one-third joint venturer in Ver-Tan Imports by virtue of the 1977 agreement between himself, Vergopia and Tomasulo to form the joint venture. The plaintiff testified that he did not get the loan he applied for from the Bergen County Bank in 1977, but was not told until 1979 that his loan application had been rejected and that Vergopia "played a dirty trick" on him by leading him to believe that he was "part of the loan".

The defendant, Vergopia, on the other hand, testified that the plaintiff had been informed of the rejection of his application and that the plaintiff's attempts to raise the money thereafter were unsuccessful. The defendants conceded that the plaintiff was considered a joint venturer in Ver-Tan Imports but only to the extent of his proportionate share of the total contributions to the venture, which amounted to 14.64%.

The Judicial Hearing Officer found, *inter alia,* that (a) the plaintiff was a one-third joint venturer in Ver-Tan Imports and (b) he was entitled to an accounting demonstrating the interrelationship of Ver-Tan Imports and Jan-Mar. On appeal, the defendants contend that the above findings were erroneous. We agree with the defendants only as to the first finding.

"An indispensable essential of a contract of partnership or joint venture, both under common law and statutory law, is a mutual promise or undertaking of the parties to share in the profits of the business *and submit to the burden of making good the losses" (Matter of Steinbeck v Gerosa,* 4 NY2d 302, 317, *appeal dismissed* 358 US 39; *Chipman v Steinberg,* 106 AD2d 343, 344, *affd* 65 NY2d 842). The record indicates that the plaintiff and the defendants Vergopia and Tomasulo agreed in 1977 to form a joint venture with each to have a one-third interest therein. That agreement, however, was contingent upon each of the three risking approximately $17,000 to launch the venture. By failing to participate with Vergopia and Tomasulo, the plaintiff failed to become a joint venturer in Ver-Tan Imports when it was formed by those two defendants and Vargin. In fact, the plaintiff contributed nothing to the initial investment.

The mere allegation on the part of the plaintiff that he was a one-third joint venturer in Ver-Tan Imports, or that he and the defendants Vergopia and Tomasulo had agreed to form a

joint venture and share equally therein, does not, of itself, entitle the plaintiff to a one-third interest in the venture. At most, in 1977, there was an oral agreement among the three to engage in a joint venture (cf., Armstrong v Rickard, 199 App Div 880, 886-887). The allegations of the plaintiff in regard to his being tricked into believing that he was "part of the loan", if true, would entitle him to damages from Vergopia and Tomasulo for breach, if any, of the oral agreement to engage in the joint venture (see, Bagley v Smith, 10 NY 489; Crownshield Trading Corp. v Earle, 200 App Div 10, 16; Armstrong v Rickard, supra, at 886). However, there was no joint venture created in 1977 between the plaintiff and Vergopia and Tomasulo.

The plaintiff later became the fourth joint venturer of Ver-Tan Imports to the extent of the proportionate share of his contributions. Those contributions were made in 1978 and 1979 and amounted to 14.64% of the total capital invested in the enterprise at the time the instant action was commenced.

The finding that the plaintiff is entitled to an accounting is fully supported by the record (see, Partnership Law § 44). Niehoff, J. P., Lawrence, Weinstein and Sullivan, JJ., concur.